IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Joey Chester Fulmer, | ) Case No. 8:10-cv-1854-JMC-JDA |
| | ) |
| Plaintiff, | ) **REPORT AND RECOMMENDATION** |
| | ) **OF MAGISTRATE JUDGE** |
| v. | ) |
| | ) |
| TranTech Radiator Products, Inc.; Paul Cooper, CEO; Deirdre E. Hicks, Human Resources Manager; Bobby Easler, Plant Manager; Raymond Griffin, Supervisor; Carl Houston, Supervisor, | ) ) ) ) ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

This matter is before the Court on a motion for summary judgment filed by Defendants TranTech Radiator Products, Inc. ("Trantech," as identified by Defendants), Paul Cooper ("Cooper"), Deirdre E. Hicks ("Hicks"), Bobby Easler ("Easler"), Raymond Griffin ("Griffin"), and Carl Houston ("Houston").[1] [Doc. 57.] Plaintiff, proceeding pro se, brought this action alleging violations of the Americans with Disabilities Act ("ADA"). [*See* Doc. 1 at 3–4.] Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(e), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed by individuals proceeding pro se and to submit findings and recommendations to the District Court.

---

[1] After Defendants filed the instant motion for summary judgment, the District Court adopted this Court's recommendation that the individual defendants be dismissed from this action. [Doc. 69.] Following the District Court's ruling, the individual defendants were terminated as parties, and the individual defendants' motion to dismiss the Amended Complaint [Doc. 54] was terminated as moot. Accordingly, the only Defendant remaining in this action is Trantech, and the only pending motion is Defendants' motion for summary judgment [Doc. 57], and thus, the Court will address the arguments raised in the motion for summary judgment related to Trantech.

Plaintiff filed this action on July 16, 2010. [Doc. 1.] On August 23, 2010, Plaintiff responded to the Court's special interrogatories, indicating Plaintiff had received a "right to sue" letter from the Equal Employment Opportunity Commission. [Doc. 11.] On March 17, 2011, Trantech filed the instant motion for summary judgment. [Doc. 57.] Subsequently, the Court issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. [Doc. 58.] Plaintiff failed to file a response in the time allowed by the *Roseboro* Order, and on April 28, 2011, the Court issued an Order for Plaintiff to file a response to Trantech's motion within twenty days of the date of the Order. [Doc. 67.] On May 19, 2011, Plaintiff filed a response in opposition to Trantech's motion for summary judgment. [Doc. 77.] Accordingly, Trantech's motion is now ripe for review.

## **BACKGROUND**[2]

In 2007, Plaintiff experienced back problems for which he sought medical attention [Doc. 51 at 8]; he took a medical leave of absence from Trantech in late 2007 [Doc. 57-3 at 29:5–22]. Plaintiff alleges his doctor recommended he be put on light duty. [Doc. 51 at 8; Doc. 57-3 at 32:11–33:21; *see* Doc. 1 at 3.] In his deposition, Plaintiff testified that upon his return to work, Easler informed Plaintiff that if he brought in a light duty note, he would be fired. [Doc. 57-3 at 22:19–23.] For the remainder of 2007 and all of 2008, Plaintiff worked full time in his position as a welder, and although he alleges he worked in pain, he

---

[2] The following background, forming the basis of Plaintiff's claims, is a summary of Plaintiff's allegations and statements contained in the Complaint [Doc. 1], Amended Complaint [Doc. 51], and Plaintiff's deposition taken by Defendants [Doc. 57-3].

2

did not return to his doctor. [Doc. 1 at 3; Doc. 51 at 8; Doc. 57-3 at 31:21–24, 33:8–13, 34:2–24, 50:8–51:2.]

In January 2009, Plaintiff took off work to see a physician. [Doc. 57-3 at 31:21–32:4, 34:25–35:16.] Following that visit, Plaintiff received treatment and did not return to work. [Doc. 57-3 at 36:8–15, 37:9–38:11; *see also* Doc. 57-3 at 51:7–53:4 (discussing the several doctor's notes excusing Plaintiff from work from January 29, 2009 until March 16, 2009).] Plaintiff returned to work on March 16, 2009, and he was terminated on the same day. [Doc. 1 at 3–4; Doc. 57-3 at 38:17–20, 53:5–7.] Plaintiff's Complaint and Amended Complaint have been construed as alleging claims of discrimination in violation of the Americans with Disabilities Act ("ADA").[3] [Doc. 49 at 2 n.1 (report and recommendation ("R&R") recommending dismissal of individual Defendants); *see* Doc. 69 (order adopting R&R and incorporating R&R into the order).]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S.97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under

---

[3] In Plaintiff's latest filing, Plaintiff for the first time classified his claims as arising under the Family and Medical Leave Act ("FMLA"). [Doc. 79 at 4.] Because, other than this one reference, Plaintiff has failed to argue his claims arise under the FMLA, and the Complaint and Amended Complaint fail to allege a violation of the FMLA, the Court continues to construe Plaintiff's claims as claims of discrimination in violation of the ADA.

this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the

4

allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

A plaintiff alleging employment discrimination may "avert summary judgment . . . through two avenues of proof." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004). First, a plaintiff may survive a motion for summary judgment "by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor . . . motivated the employer's adverse employment decision." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005) (citing *Hill*, 354 F.3d at 284). Alternatively, a plaintiff "may 'proceed under [the *McDonnell Douglas*] "pretext" framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination.'" *Id.* (quoting *Hill*, 354 F.3d at 285); *see also Eckhardt v. Bank of Am., N.A.*, No. 3:06cv512, 2008 WL 5100843, at *12–17 (W.D.N.C. Nov. 26, 2008) (analyzing summary judgment on ADA claim through direct evidence of discrimination and the burden-shifting framework of *McDonnell Douglas*).

Here, liberally construing Plaintiff's pleadings and response in opposition to Trantech's motion for summary judgment, the Court concludes Plaintiff has arguably articulated direct or circumstantial evidence of discrimination as well as argued that Trantech's articulated legitimate, nondiscriminatory reason for terminating Plaintiff is a pretext for discrimination. [Doc. 77 ("[I]t was at this point [in 2007] that Bobby Easler (Plant Manager) at the time said to me, 'If you bring a lite duty slip in here, I will fire you on the spot.'"); *see also* Doc. 57-3 at 23:6–13 (stating Plaintiff's belief that he was terminated

6

because he was hurt), 40:8–12 (indicating in his deposition that at the time Plaintiff was fired, he was told "all this good stuff" about the cutbacks being the reason he was terminated), 41:16–25 ("They said they made [the decision to let some people go] way back in January. But we had a company meeting, I think, in the last part of December or January, when we was just told, you know, oh, this is a perfect time if you want to go buy a house. Business is doing good. So come on, now all of a sudden, you know, it just didn't make sense to me."), 54:4–55:11 (indicating Plaintiff's belief that the lay-off was just an excuse and that he was fired because of his health condition).] Accordingly, the Court will consider whether Plaintiff can survive Trantech's motion for summary judgment using either avenue of proof.[4]

**Direct/Circumstantial Evidence Analysis**

Utilizing the direct evidence avenue of proof "command[s] the production of 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" *Hill*, 354 F.3d at 284–85 (quoting *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir. 1995)). Here, Plaintiff testified in his deposition that Easler told Plaintiff that if he brought in a light duty slip, Easler would fire him [Doc. 57-3 at 22:19–23], and Plaintiff used Easler's comment as a ground to oppose Trantech's motion for summary judgment [Doc. 77 at 1]. However, as

---

[4] As explained above, while the Court must liberally construe Plaintiff's pleadings, the Court cannot construct Plaintiff's legal arguments for him, *Small*, 998 F.2d at 417–18. Here, the Court addresses only the claims presented through Plaintiff's pleadings on which Plaintiff could prevail, *Barnett*, 174 F.3d at 1133, although the Court "will neither strain to discover a factual predicate for Plaintiff's claims, . . . nor will it look for evidentiary support for the same," *Alston v. GE Gas Turbines (Greenville), LLC*, No. 6:08-2897-HMH-BHH, 2009 WL 4016516, at *5 (D.S.C. Nov. 18, 2009). The Court considers only the factual predicate clearly presented by Plaintiff.

explained below, this one isolated comment fails to demonstrate a genuine issue of material fact remains as to the motivation for Trantech's decision to terminate Plaintiff.

The record reveals that Plaintiff took a leave of absence from work and saw a doctor for back pain in late 2007. [Doc. 37-1 at 1, 26, 32–37 (indicating Plaintiff saw a doctor for back pain and was out of work from October 2, 2007 through October 17, 2007 for a medical reason).] Plaintiff testified that upon his return to work, Easler told Plaintiff that if he brought in a light duty slip, Easler would fire him [Doc. 57-3 at 22:9–23; *see also* Doc. 77 at 1; Doc. 51 at 8 (asserting Defendants threatened and intimidated Plaintiff and did not acknowledge Plaintiff's doctor's order for Plaintiff to be on light duty); Doc. 1 at 3 ("[B]y threats and intimidations the plant manager Bobby Easler forced me to continue my full time 10 to 12 hour days and non lite duty labor.")]. The record further supports Plaintiff's allegations that after his absence in late 2007, Plaintiff continued to work without seeing a doctor. [Doc. 77 at 2; Doc. 1 at 3; *see* Doc. 37-1.]

Trantech asserts that due to continued poor business conditions, in January 2009, Cooper, Trantech's president, asked Hicks, Trantech's human resources manager, and Kevin Riley ("Riley"), Trantech's operations manager, to plan a reduction in force ("RIF") for February 2, 2009. [Doc. 57-2 ¶¶ 2, 4; Doc. 57-5 ¶¶ 3–4; Doc. 57-6 ¶ 2.] Hicks and Riley met on several occasions in January 2009 for this purpose, with the goal of reducing the workforce based on the reduced production levels caused by decreased sales; Hicks and Riley also involved Easler, the senior production supervisor, in some of their discussions. [Doc. 57-2 ¶ 5–6; Doc. 57-5 ¶ 5; Doc. 57-6 ¶ 2.] Hicks and Riley decided to eliminate all fifteen temporary employees and eight full-time employees, including Plaintiff. [Doc. 57-2 ¶ 6; Doc. 57-5 ¶ 6.]

In selecting which employees to lay off, Hicks and Riley focused on employees' skill levels and placed an emphasis on retaining employees who were trained for more than one job. [Doc. 57-2 ¶ 6; Doc. 57-5 ¶ 5; *see* Doc. 57-6 ¶ 2.] Plaintiff was one of three welders working second shift; the other two welders were retained. [Doc. 57-2 ¶ 7; Doc. 57-5 ¶ 7.] One of the retained welders had recently been to Chicago for training to operate new robotic welding equipment; he was the only employee trained to operate this new equipment. [Doc. 57-5 ¶ 7.] The other retained welder also had additional training; he was experienced as a water tester, which is a position that requires an individual who is capable of performing all welding functions associated with the manufacture of a radiator product. [*Id.*] Unlike these two welders, Plaintiff was a general welder in the production process, and while Easler averred Plaintiff was a good, dependable welder, Plaintiff did not have the cross-training and skills of the other welders retained from the second shift. [*Id.*; Doc. 57-6 ¶ 4.]

The RIF plans were presented to and approved by Cooper in January 2009, but he decided to delay the implementation scheduled for February 2, 2009 because of a prospect of significant new business. [Doc. 57-2 ¶ 8; Doc. 57-5 ¶ 8.] When the new business did not materialize, the decision was made to conduct the RIF on March 16, 2009. [Doc. 57-2 ¶ 8; Doc. 57-5 ¶ 8.]

Hicks and Easler averred that, at the time of the RIF discussions and the decision to select Plaintiff as one of the eight full-time employees to be laid off, they did not have any knowledge of any medical condition, medical impairment, or medical restriction concerning Plaintiff. [Doc. 57-5 ¶ 9; Doc. 57-6 ¶ 5.] Riley averred that, in the discussions, there was no mention of any employee's medical condition, medical impairment, or medical

limitations. [Doc. 57-2 ¶ 5; *see also* Doc. 57-5 ¶ 13 (Hicks's averment to the same).] Hicks averred that at the time of the discussions, Plaintiff was performing his full-time welding position on second shift. [Doc. 57-5 ¶ 9.] Easler further averred that Plaintiff's 2009 medical leave of absence occurred after Easler provided input to Hicks and Riley regarding the RIF. [Doc. 57-6 ¶ 5.] Riley averred that he and Hicks presented the RIF plan to Cooper "a week or two in advance of the implementation date of February 2, 2009" [Doc. 57-2 ¶ 8], before Plaintiff left work on January 28, 2009 due to back pain. [Doc. 37-1 at 18 (stating Plaintiff was unable to work as of January 29, 2009), 19–20 (listing disability date of January 28, 2009), 40 (requesting FMLA leave beginning January 29, 2009), 41 (listing date last worked as January 28, 2009); Doc. 57-3 at 31:22–32:4 (testifying Plaintiff's pain caused him to leave work early one day in January 2009).]

Upon review of the record, the Court concludes that Plaintiff has failed to present sufficient evidence upon which a reasonable fact finder could determine that an impermissible factor motivated Plaintiff's termination. The record does not contain evidence such as a doctor's order that, at the time Easler made his alleged comment in 2007, Plaintiff needed to be assigned to light duty work. [Doc. 57-4 ¶¶ 3–4 (averring Plaintiff's personnel file contains no record that Plaintiff was under medical restrictions or physicians' requests for light duty work for Plaintiff).] Further, "[w]hile isolated statements can constitute direct evidence of discrimination, the statements must be contemporaneous to the adverse employment action." *McCray v. Pee Dee Reg'l Transp. Auth.*, 263 F. App'x 301, 306 (4th Cir. 2008). As a result, Plaintiff has failed to demonstrate how Easler's one statement, allegedly made after Plaintiff's medical leave of absence in 2007 [Doc. 57-3 at 22:19–23], indicates a motivation for discrimination in 2009, over a year later and before

10

Plaintiff next reported back problems.  *See also Hill*, 354 F.3d at 286 ("To demonstrate such an intent to discriminate on the part of the employer, an individual alleging disparate treatment based upon a protected trait must produce sufficient evidence upon which one could find that 'the protected trait . . . actually motivated the employer's decision.'  The protected trait 'must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome.'" (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000))).  Moreover, even assuming that Easler's comment constitutes improper motivation for Plaintiff's termination, "an employer will be liable not for the improperly motivated person who merely influences the decision, but for the person who in reality makes the decision."  *Id.* at 291.  Plaintiff has failed to demonstrate that Easler, the allegedly improperly motivated person, qualifies as an actual decisionmaker with respect to Plaintiff's termination; the record merely reflects that Easler provided input on employees' skills to Hicks and Riley, who were the ultimate decisionmakers.  [Doc. 57-2 ¶¶ 5–6; Doc. 57-3 at 41:4–14, 42:24–43:5; Doc. 57-5 ¶ 4–5; Doc. 57-6 ¶ 2.]  Based on the record before the Court, the Court concludes Plaintiff has failed to produce sufficient direct or circumstantial evidence of discrimination to overcome Trantech's motion for summary judgment.

### *McDonnell Douglas* Analysis

The *McDonnell Douglas* burden-shifting framework applies to discrimination claims under the ADA.  *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 n.3 (2003).  Under the burden-shifting framework, an employee must first prove a prima facie case[5] of

---

[5] To establish a prima facie case of discrimination in an ADA case, the plaintiff must demonstrate "(1) []he is disabled; (2) []he was otherwise qualified for the position; and (3)

discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (setting the framework for a Title VII discrimination claim). If the plaintiff succeeds, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the employer does so, the burden shifts back to the employee to show that the articulated reason was actually a pretext for discrimination. *Id.* at 804.

However, as one court within the Fourth Circuit has noted, "[t]he relevance of the *McDonnell Douglas* scheme outside of the trial context is limited." *Lerner v. Shinseki*, No. ELH-10-1109, 2011 WL 2414967, at *14 (D. Md. June 10, 2011). The Fourth Circuit Court of Appeals has observed,

> Notwithstanding the intricacies of proof schemes, the core of every Title VII case remains the same, necessitating resolution of "the ultimate question of discrimination *vel non*." *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). As the Supreme Court has explained, "[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Thus, "[c]ourts must . . . resist the temptation to become so entwined in the intricacies of the [ *McDonnell Douglas* ] proof scheme that they forget that the scheme exists solely to facilitate determination of 'the ultimate question of discrimination *vel non*.' " *Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991) (citation omitted).

---

[]he suffered an adverse employment action solely on the basis of the disability." *Perry v. Computer Sci. Corp.*, 429 F. App'x 218, 220 (4th Cir. 2011) (unpublished opinion) (citing *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005)); *see also McDonnell Douglas*, 411 U.S. at 802 n.13 (stating that "[t]he facts necessarily will vary in [discrimination] cases, and the specification [given in *McDonnell Douglas*] of the prima facie proof required from [the employee] is not necessarily applicable in every respect to differing factual situations").

*Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294–95 (4th Cir. 2010). Further, the Supreme Court has stated,

> Where the defendant has done everything that would be required of him if the plaintiff had properly made out a *prima facie* case, whether the plaintiff really did so is no longer relevant. The district court has before it all the evidence it needs to decide whether "the defendant intentionally discriminated against the plaintiff."

*Aikens*, 460 U.S. at 715 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *see Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) ("The *Aikens* principle applies, moreover, to summary judgment as well as trial proceedings."). In light of this guidance from the Supreme Court and the Fourth Circuit, the Court agrees with the District of Maryland that where the employer has met its burden of articulating a legitimate, nondiscriminatory reason for its adverse action against the plaintiff, the Court may assume, without deciding, that the plaintiff has established a prima facie case of discrimination. *Lerner*, 2011 WL 2414967, at *14.

Here, Trantech has articulated and supported a legitimate, nondiscriminatory reason for Plaintiff's discharge—the RIF above. Trantech asserts it began to plan a RIF in January 2009 due to continued poor business conditions [Doc. 57-2 ¶¶ 2, 4; Doc. 57-5 ¶¶ 3–4; Doc. 57-6 ¶ 2], and Plaintiff was selected to be laid off because he lacked the cross-training possessed by other second shift welders [Doc. 57-5 ¶ 7; Doc. 57-6 ¶ 4]. Based on this explanation given by Trantech, the Court concludes Trantech has met its burden under *McDonnell Douglas* to produce evidence from which a jury could conclude Trantech had a legitimate, nondiscriminatory reason for terminating Plaintiff. Consequently, the Court assumes without deciding that Plaintiff has met his burden of production with respect to a

13

prima facie case of discrimination. *See Lerner*, 2011 WL 2414967, at *14. Accordingly, the Court will consider whether Plaintiff has met his burden of demonstrating that Trantech's proffered reason is merely a pretext for discrimination, which would indicate whether Plaintiff could meet his ultimate burden of persuasion and demonstrate discrimination *vel non*. *See Merritt*, 601 F.3d at 294 ("The final pretext inquiry 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination,' which at all times remains with the plaintiff." (alteration in *Merritt*) (quoting *Burdine*, 450 U.S. at 256)).

Upon review of the record, the Court determines Plaintiff has failed to demonstrate a genuine issue of material fact as to whether Trantech's proffered reason for Plaintiff's termination is merely a pretext for discrimination. Plaintiff contends that, contrary to Trantech's representations, Trantech knew or should have known about Plaintiff's back condition because of the medical excuses and paperwork he submitted to Trantech. [Doc. 77 at 2 (referencing documents submitted as additional attachments to Plaintiff's response in opposition to the motion to dismiss filed by Defendants Cooper, Easler, Hicks, Raymond Griffin, and Carl Houston; the additional attachments are docketed as Docket Entry 37-1).] However, the record does not support Plaintiff's contention. Instead, the evidence referenced by Plaintiff establishes only that Trantech knew or should have known that in late 2007 and then beginning on January 29, 2009 that Plaintiff received medical care for back pain. [*See, e.g.*, Doc. 37-1 at 18, 23 (stating that Plaintiff was unable to work as of January 29, 2009 and had a similar condition in October 2007), 26, 32–37 (indicating Plaintiff was out of work from October 2, 2007 through October 17, 2007 for a medical reason), 40 (requesting Family and Medical Leave Act leave beginning on January 29,

2009).] While there is an indication in the evidence referenced by Plaintiff that his back condition began in October 2007 and continued from that date [*id.* at 6, 19], there is also an indication that Plaintiff's symptoms first appeared in January 2009 [*id.* at 19]. As stated above, Trantech has demonstrated Plaintiff's medical leave of absence in January 2009 occurred after Hicks and Riley made the decision to terminate Plaintiff as part of the RIF. [Doc. 57-6 ¶ 5; *see also* Doc. 57-2 ¶ 8 (averring that Hicks and Riley presented the RIF plan to Cooper "a week or two in advance of the implementation date of February 2, 2009).][6] Therefore, the Court concludes Plaintiff has failed to demonstrate Trantech's articulated reason for terminating Plaintiff is pretext because Plaintiff has not established Trantech was aware of Plaintiff's medical condition at the time Hicks and Riley decided to terminate Plaintiff as part of the RIF.

---

[6] Even if the record supported Plaintiff's contention that Trantech knew of Plaintiff's back condition, Plaintiff has failed to demonstrate Trantech's legitimate, nondiscriminatory reason for Plaintiff's termination is a pretext for discrimination. As stated above, Plaintiff has failed to demonstrate how Easler's single, isolated, noncontemporaneous statement indicates a motivation for discrimination. Further, assuming Trantech knew of Plaintiff's alleged disability, Plaintiff has failed to demonstrate that Trantech's knowledge, or Trantech's knowledge plus Easler's alleged discriminatory statement, establishes Trantech's legitimate, nondiscriminatory reason for Plaintiff's termination is pretext for discrimination—i.e., that Plaintiff was terminated *because of* his alleged disability.

Moreover, Plaintiff apparently does not dispute Trantech was conducting a RIF at the time of Plaintiff's termination. Plaintiff does not dispute other employees were laid off. Plaintiff does not dispute the retained welders were cross-trained and Plaintiff was not cross-trained. Accordingly, the Court concludes Plaintiff has failed to demonstrate a genuine issue of material fact as to whether Trantech's legitimate, nondiscriminatory reason for Plaintiff's termination is pretext for discrimination, and, thus, Plaintiff has failed to demonstrate he could meet his ultimate burden of persuasion and demonstrate he was terminated because of his alleged disability. *See Merritt*, 601 F.3d at 294.

**RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Trantech's motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin<br>United States Magistrate Judge

December 20, 2011
Greenville, South Carolina